**James Edward CLARK,
Plaintiff–Appellant,**

**v.**

**Robert POULTON, Utah State Corrections Department, David Jorgenson, Salt Lake County Sheriff's Office, and John Does I through X, Defendants–Appellees.**

No. 88–1177.

United States Court of Appeals,
Tenth Circuit.

Sept. 21, 1990.

Janice M. Church, Holme Roberts & Owen (Jeffrey A. Chase, with her on the brief), Denver, Colo., for plaintiff-appellant.

Jerry G. Campbell, Deputy County Atty. (David E. Yocom, Salt Lake County Atty., with him on the brief), Salt Lake City, Utah, for Salt Lake County defendants-appellees.

Brent A. Burnett, Asst. Atty. Gen. (R. Paul Van Dam, Atty. Gen., David L. Wilkinson, Atty. Gen., Stephen J. Sorenson, Asst. Atty. Gen., and William F. Bannon, Asst. Atty. Gen., with him on the brief), Salt Lake City, Utah, for defendants-appellees Robert Poulton and Utah State Corrections Dept.

Before HOLLOWAY, SEYMOUR and ANDERSON, Circuit Judges.

SEYMOUR, Circuit Judge.

James E. Clark brought this suit under 42 U.S.C. § 1983 (1982) against the Adult Parole Division of the Utah State Corrections Department, parole officer Robert Poulton, the Salt Lake County jail, and David Jorgenson, a transportation officer employed at the jail. Clark alleged that his constitutional rights were violated by two separate incidents of excessive force, and by the denial of medical treatment and of reasonable access to the mails during his pretrial detention in the jail. The district court referred the case to a magistrate pursuant to 28 U.S.C. § 636(b)(1)(B) (1988). The magistrate held an evidentiary hearing and submitted a report recommending that Clark's claims be dismissed. The district court adopted this report and entered judgment accordingly. Clark appeals, asserting that the magistrate had no jurisdiction because the referral was not authorized by statute, that in any event the district court failed to conduct a proper de novo review of the portion of the report to which Clark had objected, and that the magistrate erred in his application of the law. We conclude that the magistrate was without jurisdiction, and we therefore reverse.

## I.

## BACKGROUND

The relevant facts are briefly as follows. While on parole following state court convictions, Clark returned to Salt Lake City after an out-of-state visit approved by his parole officer, Poulton, and learned that the police were looking for him in connection with two armed robberies. The day after Clark returned, he reported to Poulton at the Salt Lake County Parole office. Poulton arrested him on suspicion of the armed robberies, handcuffed him, and took him down the hall to be booked. When Clark objected during the booking to being photographed without an attorney, Poulton allegedly pushed Clark against the wall and lifted his handcuffed arms over his head, aggravating a previous back injury. Following his transportation to the jail, Clark purportedly did not receive requested medical treatment for his back for several weeks.

While detained in the jail, Clark and several other inmates were transported to court by Jorgenson. On leaving the courtroom, Clark asked to use the restroom and Jorgenson told him he would have to wait. Because of previous surgery, waiting was difficult and uncomfortable for Clark and

he later doubled over in the courthouse elevator. Jorgenson allegedly grabbed Clark's neck and chest and pushed him into the elevator wall, again aggravating his back injury. Clark required physical therapy for a year after his release from jail and sought recovery of these medical expenses as part of his damages.[1]

Clark's original complaint was filed May 12, 1986. On May 14, the district court entered an order of reference which stated:

> "IT IS ORDERED that as authorized by 28 U.S.C. § 636(b)(1)(B) and the rules of this court the above entitled case is referred to the magistrate. He is directed to manage the case, to receive all motions filed, hear oral arguments hereon, to conduct evidentiary hearings when proper and make proposed findings of fact, and to submit to the undersigned judge a report and recommendation for the proper resolution of dispositive matters presented."

Rec., vol. I, doc. 2. Pursuant to the order, the magistrate thereafter determined that Clark could proceed in forma pauperis, appointed him counsel, held scheduling and pretrial conferences, conducted an evidentiary hearing (described in the relevant documents as a trial), and issued a report recommending that Clark's claims be dismissed. Clark objected to the report, which the district court summarily adopted in all respects.

## II.

## REFERENCE TO A MAGISTRATE

We begin our analysis of this issue by examining the jurisdiction and powers of a federal magistrate set out in 28 U.S.C. § 636 (1988). Under section 636(b)(1)(A), a judge may designate a magistrate to hear and determine all pretrial matters except for those dispositive motions specifically listed therein.[2] The district court reviews a section 636(b)(1)(A) determination under the same standard that an appeals court applies to a district court determination, ascertaining whether the "order is clearly erroneous or contrary to law." *Id.*

Under section 636(b)(1)(B), the provision which the district court invoked in this case, a magistrate may be designated to conduct evidentiary hearings and submit reports and recommendations in three types of proceedings: 1) hearings on those dispositive motions excepted in section 636(b)(1)(A); 2) applications by criminal defendants for posttrial relief; and 3) prisoner petitions challenging conditions of confinement.[3] Upon the objection by a party to the magistrate's proposed findings and recommendations under this section, the district court is required to make a de novo determination. *Id.*

Section 636(b)(2) allows a judge to appoint a magistrate to serve as a special master, either pursuant to the Federal Rules of Civil Procedure or, upon consent of the parties, without regard to Rule 53(b)

---

**1.** Clark spent nine months in the jail pending disposition of the charges against him, one of which was dismissed after his acquittal on the other. During his incarceration, his truck was repossessed, and he could not attend school for which he had already paid tuition. Because of this loss of student status, he also lost the deferral of his student loan repayment. In addition to his medical expenses, Clark sought recovery for these losses, as well as injunctive relief relating to his parole and to the jail's magazine subscription policy. We express no opinion on the relief Clark seeks.

**2.** Section 636(b)(1)(A) provides:

> "[A] judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an

indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action."

28 U.S.C. § 636(b)(1)(A).

**3.** Section 636(b)(1)(B) provides:

> "[A] judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement."

28 U.S.C. § 636(b)(1)(B).

of the Federal Rules of Civil Procedure. Section 636(b)(3) provides that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).

Finally, section 636(c)(1) provides that a magistrate "*[u]pon consent of the parties ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case,* when specially designated to exercise such jurisdiction by the district court or courts he serves." 28 U.S.C. § 636(c)(1) (emphasis added). Section 636(c)(2) sets out specific requirements regarding such consent:

> "If a magistrate is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, *notify the parties of their right to consent* to the exercise of such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, *neither the district judge nor the magistrate shall attempt to persuade or induce any party to consent* to reference of any civil matter to a magistrate. *Rules of court for the reference of civil matters to magistrates shall include procedures to protect the voluntariness of the parties' consent.*"

28 U.S.C. § 636(c)(2) (emphasis added). A judgment entered pursuant to Section 636(c)(1) may be appealed either to the court of appeals or to the district court, in the same manner as a district court judgment would be appealed to a court of appeals.[4]

## A. Authorization

As we have noted, the district court here stated that the order of reference was made under section 636(b)(1)(B), which applies to hearings on certain dispositive motions, applications for post-conviction relief, and prisoner petitions challenging conditions of confinement. Since no dispositive motion was filed below, and since Clark

was not seeking post-conviction relief, the only arguably applicable provision is the one allowing reference of prisoner challenges to conditions of confinement.

Conditions of confinement have been described as "ongoing prison practices and regulations with regard to matters such as placement in maximum security, deadlocks, unhealthy living conditions, unnecessary exposure to violence-prone inmates, overcrowded physical environments, and cruel or unusual punishment by prison authorities." *Hill v. Jenkins,* 603 F.2d 1256, 1260 (7th Cir.1979) (Swygert, J., concurring). Such ongoing practices do not include "a single incident that occurred in the prison." *Id.* (concurring on ground that loss of property from prison shakedown not condition of confinement). The above definition has been generally accepted by those courts addressing the issue. *See, e.g., Houghton v. Osborne,* 834 F.2d 745, 749 (9th Cir.1987); *Hall v. Sharpe,* 812 F.2d 644, 647 n. 1 (11th Cir.1987); *Wimmer v. Cook,* 774 F.2d 68, 74 n. 9 (4th Cir.1985); *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir.1982); *but see McCarthy v. Bronson,* 906 F.2d 835, 839 (2d Cir.1990). This definition, which we likewise adopt, does not encompass the two instances of the use of excessive force alleged by Clark. Those incidents, one of which occurred before Clark was even admitted to the jail, are clearly isolated events rather than part of a series of ongoing jail practices. Accordingly, the reference to the magistrate of the claims is not authorized by section 636(b)(1)(B).

The dissent's characterization of our construction of "conditions of confinement" as unsupported by reason or authority is simply wrong. As the dissent recognizes, only two circuits have reached decisions contrary to the construction we adopt in this opinion, and only one of those circuits has explicitly disagreed with it. *See McCarthy,* 906 F.2d at 839. The court in *McCarthy* relied on *Branch v. Martin,* 886 F.2d

---

**4.** In addition to the provisions discussed above, section 636(a)(3) grants magistrates the power to conduct trials under 18 U.S.C. § 3401 (1988). Section 3401 gives a magistrate jurisdiction to

try and sentence defendants accused of misdemeanors upon special designation by the district court and the written consent of the defendant.

1043 (8th Cir.1989), in which the court noted in passing that "[t]he term 'conditions of confinement' has been interpreted expansively to include almost any prisoner § 1983 action challenging 'the type of confinement, and matters concerning health, safety, or punishment.'" 886 F.2d at 1045 n. 1 (quoting *Houghton v. Osborne*, 834 F.2d 745, 749–50 (9th Cir.1987), and citing additional cases). However, the cases cited in *Branch* do not support *McCarthy's* holding because they involve claims falling within our construction of the statute, with the exception of *Archie v. Christian*, 808 F.2d 1132 (5th Cir.1987), which does not describe the challenged conduct, and *Cay v. Estelle*, 789 F.2d 318 (5th Cir.1986), which does not address the condition-of-confinement issue.

■ Moreover, our construction is grounded, as it must be, on the plain and commonly understood meaning of the word "condition." *See Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) ("A fundamental canon of construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). "Condition" is defined as "existing state of affairs," and "a mode or state of being." *Webster's Third New International Dictionary* 473 (1981). The word thus clearly connotes an ongoing situation as opposed to an isolated incident. The court in *McCarthy* and the dissent here improperly defend their refusal to give effect to this plain meaning as justified by Congressional policy. The law, however, is to the contrary. "[I]t should be generally assumed that Congress expresses its purposes through the ordinary meaning of the words it uses." *Escondido Mut. Water Co. v. La Jolla Band of Mission Indians*, 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984).

Finally, we note that one of Clark's excessive force claims arises from an alleged incident occurring *before* he was jailed and involving his probation officer. This claim indisputably does *not* challenge a condition of confinement even under the dissent's broad construction of that term.

■ Nor is the reference authorized under section 636(b)(3), which permits assignment to the magistrate of additional duties not inconsistent with the Constitution and federal law. This conclusion is compelled by the Supreme Court's analysis in *Gomez v. United States*, —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), in which the Court considered the scope of section 636(b)(3). In *Gomez*, a magistrate had empaneled a jury in a felony trial over the objection of the defendants. In reversing the defendants' convictions, the Supreme Court concluded that the additional-duties clause, when considered in the context of the overall statutory scheme, does not encompass the seating of a jury in a felony trial.

In reaching this conclusion, the Court relied upon two established canons of statutory construction which apply with equal force in the instant case. First, the Court followed its "settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Id.* 109 S.Ct. at 2241. The Court thus obviated the need to consider the constitutionality of assigning felony jury selection to a magistrate under section 636(b)(3) by determining that section 636(b)(3) itself did not authorize such an assignment. In so doing, the Court applied a second principle, stating that in interpreting a statute a court must not be "'guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" *Id.* (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987)). The Court then reviewed the Act as a whole in light of its evolution and legislative history and concluded that while a literal reading of section 636(b)(3) in isolation would encompass the assignment of the duties at issue, "the carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial." *Id.* 109 S.Ct. at 2245.

Applying these principles to the instant facts, we hold that section 636(b)(3) does not authorize a district court to designate a magistrate to conduct a hearing on a prisoner's petition that does not challenge a condition of confinement. *Gomez* precludes both construing section 636(b)(3) in isolation, and upholding the assignment of additional duties on constitutional grounds without first ascertaining whether the assignment is authorized by the statute when considered as a whole. Here, section 636(b)(1)(B) carefully limits a magistrate's authority to conduct hearings on prisoner petitions, extending that authority only to petitions challenging conditions of confinement. Under *Gomez*, this articulation of specific duties must be construed as implicitly withholding other duties not so specified, particularly when, as here, the contrary construction would in effect render the specific limitations a nullity.[5] *See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) ("elementary canon of construction that a statute should be interpreted so as not to render one part inoperative").

■■■ Defendants argue on appeal that the reference can be upheld under section 636(c). We disagree. While section 636(c) permits a magistrate to conduct a trial in a civil matter, neither the district court nor the magistrate here purported to act pursuant to that provision. Moreover, magistrate jurisdiction to proceed under section 636(c) requires a special designation by the district court, *id.* § 636(c)(1), and the consent of the parties communicated to the clerk of court, *id.* § 636(c)(2), neither of

which is present here.[6] In finding the prerequisites for magistrate jurisdiction under section 636(c) lacking here, we join the great weight of authority and hold that consent under section 636(c)(2) must be explicit and cannot be inferred from the conduct of the parties. *See Securities & Exchange Comm'n v. American Principals Holdings (In re San Vicente Medical Partners Ltd.),* 865 F.2d 1128 (9th Cir. 1989); *Silberstein v. Silberstein,* 859 F.2d 40 (7th Cir.1988); *Hall v. Sharpe,* 812 F.2d at 647; *Wimmer,* 774 F.2d at 76; *Ambrose v. Welch,* 729 F.2d 1084 (6th Cir.1984); *but see Archie v. Christian,* 808 F.2d 1132 (5th Cir.1987) (en banc).

### B. Jurisdiction

■■■ Given our conclusion that the reference was unauthorized, we must consider the significance, if any, of Clark's failure to object to proceeding before the magistrate. The majority of circuits that considered the issue prior to the *Gomez* decision concluded that an improper reference is a matter of jurisdiction and therefore not subject to waiver or harmless-error analysis.

For example, in *Houghton v. Osborne,* 834 F.2d 745, the Ninth Circuit considered facts closely analogous to those before us. There the district court had referred a prisoner's civil rights action to a magistrate, who held an evidentiary hearing on the merits of the claim and filed proposed findings and recommendations that were adopted by the district court. On appeal, the court held *sua sponte* that the prisoner's claim did not challenge a condition of confinement, and that the district court therefore "lacked the jurisdiction to refer

---

**5.** The dissent cites *Marvel v. United States,* 719 F.2d 1507 (10th Cir.1983), for the proposition that "the majority's construction of the statute does not avoid deciding a constitutional issue, for this court has already held that Article III allows a magistrate to preside over a civil matter so long as the district court reviews the matter de novo." Dissent at 1436 n. 4. *Marvel* is totally inapposite inasmuch as the parties there consented to trial before the magistrate. *See* 719 F.2d at 1512 ("[W]e hold there is ample statutory authority under 28 U.S.C. § 636(b)(2) to refer a civil case to a federal magistrate for trial on the merits, provided the parties consent to such a procedure.")

**6.** Section 636(c)(2) also states that "[r]ules of court for the reference of civil matters to magistrates shall include procedures to protect the voluntariness of the parties' consent." Our examination of the Civil Rules of Practice of the United States District Court for the District of Utah reveals no provision for the reference of civil trials to a magistrate. To the contrary, magistrates do not generally even conduct final pre-trial conferences, *see* Rule 9(d), and are specifically precluded from entering any order dispositive of a substantive issue in the case, *see* Rule 9(i).

this matter to the magistrate to conduct an evidentiary hearing on the *merits* of Houghton's 1983 action." *Id.* at 750. Similarly, in *Hall* the district court purported to refer a prisoner's civil rights suit to a magistrate under sections 636(b)(1) and (b)(3) for a trial before an advisory jury. The magistrate issued a report recommending acceptance of the jury verdict, which the district court adopted in entering final judgment against the plaintiff. On appeal, the Eleventh Circuit concluded that "the district court's referral of this case was not authorized by any provision of the Magistrate's Act, 28 U.S.C. § 636, and thus the magistrate was without jurisdiction to conduct the trial." 812 F.2d at 646; *see also Lovelace v. Dall*, 820 F.2d 223 (7th Cir. 1987) (per curiam) (unambiguous consent of parties required for magistrate to have jurisdiction to enter final judgment under section 636(c)); *Frank v. Arnold (In re Morrissey)*, 717 F.2d 100 (3d Cir.1983) (magistrate had no jurisdiction to hear appeal from bankruptcy court order notwithstanding parties' express consent); *Taylor v. Oxford*, 575 F.2d 152 (7th Cir.1978) (magistrate had no jurisdiction over motion to dismiss for failure to state claim referred under section 636(b)(3) for final disposition pursuant to parties' stipulation and local rule); *but see Archie v. Christian*, 808 F.2d 1132, at 1134–35 (5th Cir.1987) (en banc) (improper reference under sections 636(b)(1)(B) and (b)(3) matter of procedure rather than jurisdiction).[7]

In *Gomez*, the defendants had objected to the assignment to the magistrate, but they made no special claim of prejudice on appeal and the government therefore contended that the error was harmless. The Supreme Court rejected this argument, stating that "harmless-error analysis does not apply in a felony case in which, despite the defendant's objection and without any meaningful review by a district judge, an officer *exceeds his jurisdiction* by select-

ing a jury." 109 S.Ct. at 2248 (emphasis added).

Notwithstanding this language, courts subsequent to *Gomez* have varied in their assessment of the relevance of that opinion to cases in which the defendant did not object to the magistrate's unauthorized acts. In *United States v. Mang Sun Wong*, 884 F.2d 1537, 1544–46 (2d Cir.1989) (order on petition for rehearing), *cert. denied*, —— U.S. ——, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990), a majority of the panel distinguished *Gomez*, read it narrowly, and held without analyzing the jurisdictional issue that *Gomez* does not require reversal when the defendant consented to the magistrate's improper exercise of power. Judge Altimari dissented, concluding that the issue is one of jurisdiction, and that consent is therefore irrelevant because it "cannot enlarge those powers of office not granted by the Federal Magistrates Act." *Id.* at 1546. *See also United States v. Mussacchia*, 900 F.2d 493 (2d Cir.1990) (following *Mang Sun Wong*, one judge dissenting).

In *United States v. France*, 886 F.2d 223 (9th Cir.1989), *cert. granted*, —— U.S. ——, 110 S.Ct. 1921, 109 L.Ed.2d 285 (1990), however, the court held *Gomez* applicable to all cases pending on direct appeal, including those in which the defendant did not object to the magistrate's jury selection. The court did not address the jurisdictional issue, grounding its decision instead on its conclusion that *Gomez* announced a new rule *appropriate* for retroactive application, and that under Ninth Circuit precedent France had not waived his entitlement to the rule by failing to object at trial. The court did emphasize several times the Supreme Court's references in *Gomez* to the magistrate's lack of "jurisdiction" and "power." *Id.* at 226 & n. 1.

---

7. The dissent asserts that our reliance on *Houghton, Lovelace,* and *In re Morrissey* is questionable because those cases do not specifically address the failure to object to an unauthorized reference. The short answer to the dissent's objection is that a determination that the issue is jurisdictional simply obviates the need to ad-

dress a failure to object. Lack of subject-matter jurisdiction renders lack of objection irrelevant. *See, e.g.,* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3801 at 7 (2d ed. 1986) (subject matter jurisdiction cannot be waived by the parties).

In *United States v. Wey,* 895 F.2d 429 (7th Cir.1990), the Seventh Circuit held that subject matter jurisdiction is not involved and that the unauthorized exercise of power was therefore subject to waiver. The case is thus contrary to the Seventh Circuit's decisions in *Lovelace,* 820 F.2d at 225–26 & n. 3, and *Taylor,* 575 F.2d at 154, in which the court held that the magistrate's power under the Act is a matter of jurisdiction and that the parties cannot confer jurisdiction which the magistrate does not possess by failing to object. The court in *Wey* relied in part on the First Circuit decision in *United States v. Lopez–Pena,* 890 F.2d 490 (1st Cir.1989), which was withdrawn upon the grant of rehearing en banc.

In its subsequent en banc opinion, the First Circuit emphasized the jurisdictional language in *Gomez,* and then agreed with *France,* 886 F.2d 223, that *Gomez* must be applied where the magistrate was permitted to empanel the jury, notwithstanding the failure to object. *See United States v. Martinez–Torres,* 912 F.2d 1552 (1st Cir. 1990). In so doing, the First Circuit expressly disapproved of the opinions in *Wey* and *Mang Sun Wong,* and criticized the discussion of consent in *Virgin Islands v. Williams,* 892 F.2d 305, 309–12 (3d Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2211, 109 L.Ed.2d 537 (1990).

We also disagree with the analysis in *Williams.* There, the court appeared to hold that the issue of the magistrate's power is a jurisdictional matter but nonetheless is subject to waiver. In so doing, the court construed section 636(b)(3) in isolation in direct contradiction to the analysis in *Gomez,* held that the section authorizes the very reference *Gomez* specifically held to be unauthorized, and then decided the constitutional issue *Gomez* deliberately avoided. The concurrence in *Williams* concluded that, although the magistrate's power raises an issue of jurisdiction, *Gomez* does not preclude plain error analysis, and the magistrate's unauthorized exercise of power was not plain error.

In our view, the Supreme Court's language and analysis in *Gomez,* and the language of the Act itself, compel the conclusion that a magistrate's power under the Act is a jurisdictional issue not subject to waiver. The Act speaks in terms of a magistrate's exercise of jurisdiction, *see* 28 U.S.C. §§ 636(c)(1) and (2), and *Gomez* repeatedly refers to a magistrate's jurisdiction. In Parts III and IV of *Gomez,* the Court traced the evolution of the powers of federal magistrates and reviewed the current authority conferred by the Federal Magistrates Act of 1979. *See* 109 S.Ct. at 2242–47. That discussion is couched in terms of Congressional grants of and limitations upon jurisdiction.

The court in *Wey* discounted the obvious impact of the use of the term "jurisdiction" by Congress and the Supreme Court. Instead, the court adopted a plain error rule, observing that although the magistrate's conduct at issue was unauthorized, the district court had subject matter jurisdiction under the relevant jurisdictional statutes. This result ignores the fact that while the limitations in the Magistrate Act do restrict a magistrate's authority to act in a case properly before the district court, the Act also restricts the district court's power to refer a matter to a magistrate. Congressionally imposed limits on the exercise of judicial power other than the delineation of subject matter jurisdiction are nonetheless jurisdictional. *See Lauf v. E.G. Shinner & Co.,* 303 U.S. 323, 330, 58 S.Ct. 578, 582, 82 L.Ed. 872 (1938); 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3526 at 227–28 (2d ed. 1984).

"[T]he jurisdiction of a magistrate to decide a case is not based solely on the consent of the parties, but derives from a proper designation by the district court. Because district court jurisdiction is statutory, its ability to make a proper designation of, and thereby to confer jurisdiction on, a magistrate is also a creature of statute."

*In re Morrissey,* 717 F.2d at 102.

We simply cannot accept an analysis under which parties by their conduct may extend the jurisdiction of both the magistrate and the district court beyond that established by Congress. We therefore

hold that the magistrate in this case was without jurisdiction to hear the excessive force claims.[8]

### III.

Accordingly, we vacate the judgment dismissing Clark's claims and remand to the district court for further proceeding consistent with this opinion.[9]

STEPHEN H. ANDERSON, Circuit Judge, dissenting:

I respectfully dissent. The referral of this case to the magistrate was authorized by the statute. Furthermore, Clark waived his right to challenge the magistrate's authority by failing to object below. The judgment should be affirmed.

### I.

### A.

The referral was authorized by the provision in 28 U.S.C. § 636(b)(1)(B) for "prisoner petitions challenging conditions of confinement." The majority errs by adopting the narrow formulation of Judge Swygert's concurrence in *Hill v. Jenkins*, 603 F.2d 1256, 1259–60 (7th Cir.1979), which is not supported by reason or authority.[1] This court should follow the two circuits which have interpreted section 636(b)(1)(B) to authorize the referral to a magistrate of prisoner suits complaining of specific incidents. *See McCarthy v. Bronson*, 906 F.2d 835, 839 (2d Cir.1990); *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir.1990); *Branch v. Martin*, 886 F.2d 1043, 1045 & n. 1 (8th Cir.1989).[2]

"Subsection 636(b)(1)(B) was added in 1976 as part of a broadening of the authority of magistrates. Act of Oct. 21, 1976, Pub.L. 94–577, 90 Stat. 2729. The House Report does not explain the category 'prisoner petitions challenging conditions of confinement' but does refer to 'petitions under section 1983 of Title 42.' H.R.Rep. No. 1609, 94th Cong., 2d Sess. 11, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6162, 6171....

8. We recognize that two of Clark's claims, his allegations of denial of medical treatment while in the jail and his challenge to the jail magazine policy, do challenge conditions of confinement. However, those claims were consolidated by agreement of the parties with Clark's excessive force claims. Given our conclusion that the parties may not consent to the magistrate's exercise of a power withheld by Congress, the parties' consent here to consolidation cannot vest the magistrate with jurisdiction over claims not referable to him.

9. We note Clark's argument that the district court did not make the required de novo review of those portions of the magistrate's report to which Clark objected. In view of our conclusion that this case must be remanded in any event, we need not address this argument other than to observe that our opinion in *Gee v. Estes*, 829 F.2d 1005, 1008–09 (10th Cir.1987), is available for the guidance of the court on this issue on remand.

1. Judge Swygert's concurrence cites no authority for his narrow construction of the statute, and the cases adopting his construction cite no authority other than the concurrence and the other cases adopting it.

In addition, it is not clear that the Eleventh Circuit agrees with Judge Swygert. *Hall v. Sharpe*, 812 F.2d 644, 647 n. 1 (11th Cir.1987), involved a complaint alleging a single incident,

but the judgment below was reversed not because the incident was not a condition of confinement, but because section 636(b)(1)(B) does not authorize magistrates to preside over jury trials. Because the citation in *Hall* to *Hill* is dictum, "only two circuits," *supra* at 1429, clearly interpret "conditions of confinement" to exclude single incidents.

2. The majority's suggestion that the Eighth Circuit does not disagree with their interpretation of the statute is incorrect. That court has approved the referral to a magistrate, as "prisoner petitions challenging conditions of confinement," a claim that prison officials "assault[ed] the plaintiff] on two occasions," *Thompson v. Nix*, 897 F.2d at 357, and a claim that "on September 10, 1986, when defendants escorted [plaintiff] from a waiting room to his cell, defendants used excessive force against him," *Branch v. Martin*, 886 F.2d at 1044. Moreover, some of the cases cited in *Branch* fall outside the majority's construction of the statute. The plaintiff in *Gee v. Estes*, 829 F.2d 1005, 1006 (10th Cir.1987), alleged, *inter alia*, an incident where "he was dragged into court with no clothing on except an oversized pair of trousers which dropped to his knees to expose him to the spectators." The plaintiff in *Cay v. Estelle*, 789 F.2d 318, 319 (5th Cir.1986), alleged "that on August 3, 1982, when [he] asked to be relieved from work duties because of a back injury, he was beaten severely...."

We see no reason why a Magistrate with clear authority to hold hearings and recommend findings as to the unconstitutionality of continuing prison conditions may not perform a similar function as to specific episodes of unconstitutional conduct by prison officials. The phrase 'conditions of confinement' appears not to have been selected as a limitation to preclude episodes of misconduct, but rather as a generalized category covering all grievances occurring during prison confinement."

*McCarthy v. Bronson,* 906 F.2d at 839.

According to the majority, a suit alleging that a prisoner was beaten once must be heard by an Article III judge, but a claim that the prisoner is beaten daily may be referred to a magistrate. Limiting the magistrate's jurisdiction to the more serious claim makes no sense, and nothing in the legislative history persuades me that Congress intended such an anomaly. *See Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982) ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available"); *American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible."). Their interpretation conflicts with the legislative intention to give magistrates broad authority to assist judges. *See* H.R.Rep. No. 1609, 94th Cong., 2d Sess. 6–8, *reprinted in* 1976 U.S. Code Cong. & Admin.News 6162, 6166–68.

One of the incidents in this case occurred shortly after Clark was arrested. The other took place while he was in pretrial detention. At neither time was he free to leave. Certainly, he was in confinement.[3] *See Wimmer v. Cook,* 774 F.2d 68, 69, 74 (4th Cir.1985) (pretrial detention); *see also Worley v. Sharp,* 724 F.2d 862, 863 (10th Cir. 1983) (same), *reh'g denied,* 759 F.2d 786 (10th Cir.1985). Because his complaint challenged conditions of his confinement, section 636(b)(1)(B) authorized the referral.

### B.

If the referral was not authorized by that subsection, it was authorized by section 636(b)(3). The articulation of specific duties in subsection (b)(1)(B) did not "implicitly withhold[ ] other duties not so specified...." *Supra* at 1431. Subsection (b)(3) is a " 'catchall' provision." *Garcia v. Boldin,* 691 F.2d 1172, 1178 (5th Cir.1982); *accord, e.g., King v. Ionization Int'l, Inc.,* 825 F.2d 1180, 1185 (7th Cir.1987). "Where the district court is not specifically empowered to refer a case, it may do so under the general provision of 28 U.S.C. § 636(b)(3)...." *Hall v. Vance,* 887 F.2d 1041, 1046 (10th Cir.1989).

In *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976), the Supreme Court reviewed the legislative history of the original Act:

"The three examples § 636(b) sets out are, as the statute itself states, not exclusive. The Senate sponsor of the legislation, Senator Tydings, testified in the House hearings:

'The Magistrate[s] Act specifies these three areas because they came up in our hearings and we thought they were areas in which the district courts might be able to benefit from the magistrate's services. We did not limit the courts to the areas mentioned....

'We hope and think that innovative, imaginative judges who want to clean up their caseload backlog will utilize the U.S. magistrates in these areas and perhaps even come up with new areas to increase the efficiency of their courts.' "

*Id.* at 267, 96 S.Ct. at 553 (quoting *Hearings on the Federal Magistrates Act Before Subcomm. No. 4 of the House Comm. on the Judiciary,* 90th Cong., 2d Sess. 81 (1968)). The legislative history of the 1976

---

**3.** "Confinement" is the "[s]tate of being confined" or "shut in" "by either a moral or a physical restraint, by threats of violence with a present force, or by physical restraint of the person." *Black's Law Dictionary* 157 (abr. 5th ed. 1983).

amendments to the Act confirms the expansiveness of subsection (b)(3):

"This subsection enables the district courts to continue innovative experimentations in the use of this judicial officer. At the same time, *placing this authorization in an entirely separate subsection emphasizes that it is not restricted in any way by any other specific grant of authority to magistrates.*"

H.R.Rep. No. 1609, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6162, 6172 (emphasis added). The statutory authorization for referring to magistrates prisoner petitions challenging conditions of confinement was not meant as a bar to the referral of prisoner petitions unrelated to conditions of confinement.[4] *See, e.g., John v. Louisiana,* 899 F.2d 1441, 1446 (5th Cir.1990) (subsection (b)(3) authorizes post-trial referral of sanctions question even though subsection (b)(1)(A) only refers to pretrial matters).

As is true of the majority's construction of subsection (b)(1)(B), their construction of subsection (b)(3) has absurd consequences. If (b)(3) only applies to matters not addressed in (b)(1), then a suit by a prisoner about something which preceded his confinement may not be referred to a magistrate (because it is "a prisoner's petition that does not challenge a condition of confinement," *supra* at 1431) but a suit by a

non-prisoner making an identical allegation may be.

## II.

I also disagree with the majority's conclusion that the absence of statutory authorization for a magistrate's participation is a non-waivable jurisdictional defect. I would hold that the issue was waived by Clark's failure to object below.

The authority upon which the majority relies does not support its conclusion. Many of the cited cases do not address the effect of a failure to object to a referral to a magistrate. *See Gomez v. United States,* — U.S. —, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989); *Houghton v. Osborne,* 834 F.2d 745 (9th Cir.1987); *Lovelace v. Dall,* 820 F.2d 223 (7th Cir.1987); *In re Morrissey,* 717 F.2d 100 (3d Cir.1983). In the others, the failure to object was excused on grounds other than non-waivability. *See United States v. Martinez–Torres,* 912 F.2d 1552, 1554 & n. 3 (1st Cir.1990) (objection would have been futile because of existing circuit authority); *United States v. France,* 886 F.2d 223, 228 (9th Cir.1989) (same), *cert. granted,* — U.S. —, 110 S.Ct. 1921, 109 L.Ed.2d 285 (1990)[5]; *Hall v. Sharpe,* 812 F.2d 644, 649 (11th Cir.1987) (appellant was allowed to rely upon the appellee's objection to proceeding before a magistrate). *Taylor v.*

**4.** *Gomez v. United States,* — U.S. —, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), does not require a contrary conclusion. There, the Court concluded that "the carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial," *id.* at 2245, because

"[w]hen a statute creates an office to which it assigns specific duties, those duties outline the attributes of the office. Any additional duties performed pursuant to a general authorization in the statute reasonably should bear some relation to the specified duties."

*Id.* at 2241. Presiding over a felony trial bears no relation to the duties specified in the statute, but presiding over a prisoner's section 1983 action does.

Also, unlike in *Gomez,* the majority's construction of the statute does not avoid deciding a constitutional issue, for this court has already held that Article III allows a magistrate to preside over a civil matter so long as the district

court reviews the matter de novo. *Marvel v. United States,* 719 F.2d 1507, 1513 (10th Cir. 1983). (That the parties in that case consented to proceeding before the magistrate is irrelevant, for parties cannot expand Article III limitations on a tribunal's jurisdiction. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).)

**5.** While the Ninth Circuit decided the case on different grounds, one of the issues before the Supreme Court, to be heard Tuesday, October 2, is whether a magistrate's lack of statutory authority is a non-waivable defect. *See* Brief of the United States at 19–21, *United States v. France,* — U.S. —, 110 S.Ct. 1921, 109 L.Ed.2d 285 (1990). In my view, we should "decline appellant's invitation to rule in a vacuum," *United States v. De La Cruz,* 902 F.2d 121, 125 (1st Cir.1990), and await the Court's decision before deciding the instant case. Deciding the matter immediately serves little purpose, but risks wasting judicial resources.

*Oxford,* 575 F.2d 152, 154–55 (7th Cir.1978), appears to agree with the majority, but that opinion, as well as *Lovelace v. Dall,* 820 F.2d 223 (7th Cir.1987), has been superseded by *United States v. Wey,* 895 F.2d 429 (7th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3283, 111 L.Ed.2d 792 (1990).[6]

The cases which consider the issue hold that a magistrate's lack of statutory authority is not a jurisdictional defect, so any objection is waived if not raised. *See id.* at 431; *Mylett v. Jeane,* 879 F.2d 1272, 1275 (5th Cir.1989); *United States v. Vanwort,* 887 F.2d 375, 382–83 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1927, 109 L.Ed.2d 290 (1990); *see also Government of the Virgin Islands v. Williams,* 892 F.2d 305, 309–312 (3d Cir.1989) (failure to object constitutes consent to reference), *cert. denied,* —— U.S. ——, 110 S.Ct. 2211, 109 L.Ed.2d 537 (1990).[7]

Any error below was a procedural lapse, not a jurisdictional failing. *Archie v. Christian,* 808 F.2d 1132, 1134–35 (5th Cir. 1987). "We do not have a 'jurisdictional' problem.... We have at most a mistaken interpretation of a law designating which judicial officer shall preside over which proceedings." *United States v. Wey,* 895 F.2d at 431.

*Gomez* does not control, for the appellant there did object to the magistrate's involvement. *United States v. Sawyers,* 902 F.2d 1217, 1220 (6th Cir.1990); *United States v. Mang Sun Wong,* 884 F.2d 1537, 1545 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990). *Gomez*'s mention of "jurisdiction" does not mean that the Act is a jurisdictional statute. "[T]he word is a many-hued term.... *Gomez* uses the word 'jurisdiction' in a context revealing that the Court meant 'authority.'" *United States v. Wey,* 895 F.2d at 431; *accord United States v. Musacchia,* 900 F.2d 493, 503 (2d Cir.1990) (court

is "[u]nable to square the Supreme Court's use of the word 'jurisdiction' with traditional notions of subject matter jurisdiction"); *Black's Law Dictionary* 443 (abr. 5th ed. 1983) ("The word is a term of large and comprehensive import, and embraces every kind of judicial action.").

### III.

On August 18, 1987, the magistrate held an evidentiary hearing, which was recorded. On September 16, he recommended that Clark's suit be dismissed. Clark objected to this recommendation, but on December 31 the district court dismissed the action. The dismissal order states that the court "made a de novo review" of the case, R. Vol. I, Tab 49, at 2, but the recording of the evidentiary hearing had not yet been transcribed.

"When objections are made to the magistrate's factual findings based on conflicting testimony or evidence, both § 636(b)(1) and Article III of the United States Constitution require de novo review." *Gee v. Estes,* 829 F.2d 1005, 1008 (10th Cir.1987). "In conducting this review, the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." *Id.* at 1009.

*Gee* was decided three months before the district court dismissed Clark's action. We presume that the district court knew the relevant law, *United States v. Lowden,* 905 F.2d 1448, 1449 n. 1 (10th Cir.1990), so the court's statement that it conducted a de novo review must be taken to mean that it listened to the tape recording of the hearing before it dismissed Clark's suit. Indeed, because of the expense and delay[8] of transcription, district courts commonly listen to a tape rather than await a transcript.

---

**6.** Similarly, *Government of the Virgin Islands v. Williams,* 892 F.2d 305 (3d Cir.1989), calls *In re Morrissey,* 717 F.2d 100 (3d Cir.1983), into doubt.

**7.** A panel of the First Circuit also reached this conclusion in *United States v. Lopez–Pena,* 890 F.2d 490, 495 n. 6 (1st Cir.1989) (advance edition), but the opinion was withdrawn so the

case could be reheard en banc and the en banc opinion does not address the issue. *See United States v. Martinez–Torres,* 912 F.2d at 1558 n. 8 (Selya, J., dissenting).

**8.** The transcript in this case was not prepared until almost 14 months after the hearing was held. *See* R.Supp. Vol. II.

*Branch v. Martin,* 886 F.2d 1043 (8th Cir.1989), which remanded in similar circumstances, is distinguishable. As here, the district court adopted the magistrate's recommendations before the transcript of a recorded hearing was prepared. As here, the district court stated that it had conducted a de novo review, but did not say anything about listening to the tape. *Id.* at 1046; *see also Moran v. Morris,* 665 F.2d 900, 901–02 (9th Cir.1981) (court of appeals remanded for further review of tape-recorded proceedings before magistrate after district court adopted magistrate's recommendations the day they were issued). The important distinction is that *Branch* announced for the Eighth Circuit the rule we adopted in *Gee.* The district court in *Branch* did not have the benefit of that decision, but the court below was aware of *Geè.* The doubts the Eighth Circuit held about the breadth of that district court's review would be unfounded here.

## IV.

On the merits of Clark's claims, I agree with the decision of the district court. Accordingly, I would affirm the judgment.